PEOPLE v BLUNT

Docket No. 120701. Submitted March 6, 1991, at Detroit. Decided
June 4, 1991, at 9:00 A.M.

Charles Blunt, Jr., was convicted following a bench trial in the
Recorder's Court for the City of Detroit, Dalton A. Roberson, J.,
of receiving and concealing stolen property valued over $100.
He then pleaded guilty of being an habitual offender, fourth
offense, and was sentenced. The defendant appealed, alleging
that the trial court erred in allowing him to represent himself
at trial.

The Court of Appeals *held:*

The court erred in allowing the defendant to represent
himself at trial without making a determination that the
defendant's decision was made knowingly, intelligently, and
voluntarily. Although the court advised the defendant that
acting as his own counsel was perilous, it failed to set forth the
disadvantages and dangers of such representation as required
by MCR 6.005(D), which applies retroactively in this case. The
defendant did not effectively relinquish his fundamental right
to counsel.

Reversed.

CRIMINAL LAW — CONSTITUTIONAL LAW — ASSISTANCE OF COUNSEL —
WAIVER — COURT RULES.

The court rule pertaining to a defendant's initial waiver of the
right to be represented by an attorney and addressing the right
of self-representation following an informed and voluntary
waiver decision redressed an existing right and, therefore,
applies retroactively (MCR 6.005[D]).

*Paul M. Stoychoff,* for the defendant on appeal.

REFERENCES

Am Jur 2d, Criminal Law §§ 989-993, 995.

Supreme Court's views as to what constitutes valid waiver of
accused's federal constitutional right to counsel. 101 L Ed 2d
1017.

Accused's right to represent himself in state criminal proceedings—
modern state cases. 98 ALR3d 13.

Before: McDonald, P.J., and MacKenzie and Wahls, JJ.

Per Curiam. On May 16, 1989, following a bench trial in Detroit Recorder's Court, defendant was convicted of receiving and concealing stolen property valued over $100, MCL 750.535; MSA 28.803. On June 15, 1989, following his conviction, defendant pleaded guilty to a charge of habitual offender, fourth offense, MCL 769.12; MSA 28.1084. Defendant was sentenced on June 30, 1989, to a term of two to five years in prison for the conviction of receiving and concealing stolen property. Subsequently, the trial court vacated that sentence and sentenced defendant to an enhanced term of four to seven years in prison for the habitual offender conviction. We reverse.

On March 11, 1989, Glen Raby, the lessee of a 1984 black Chevrolet Camaro, parked the vehicle in a parking lot at approximately 8:30 P.M. When Raby returned to the parking lot at approximately 2:30 A.M., the Camaro was gone. Raby immediately contacted the police and reported the vehicle stolen.

Detroit Police Officer James Sharpe testified that on March 14, 1989, at approximately 4:00 A.M., he and his partner, Sergeant Charles Brown, were on patrol in a Detroit neighborhood, looking for stolen cars in the area, when they observed an unoccupied 1984 black Chevrolet Camaro parked on the street. The vehicle's engine was not running. The officers ran a check of the vehicle's license plate and discovered that the Camaro had been reported stolen.

The officers drove around the block and approached the Camaro from the rear. As they did so, the vehicle's headlights came on. Officer Sharpe pulled his patrol car in front of the Camaro,

blocking its departure. Defendant was sitting in the driver seat and was unable to produce the vehicle registration or the car keys. The officers also noticed the vehicle's steering column was broken. Defendant was placed under arrest and the vehicle was impounded.

Following Officer Sharpe's testimony, and before the testimony of Sgt. Brown, defendant, who apparently became dissatisfied with his attorney, requested that the trial court allow him to conduct his own defense. The following occurred on the record:

> [*Defendant*]: May I at this time I would like to exercise my Fourteenth Amendment right and represent myself. I'd like to continue with the proceedings, no postponement or anything at this time.
>
> \* \* \*
>
> [*Defendant*]: From this point on can I exercise my right—
>
> *The Court:* Yes.
>
> [*Defendant*]:—14th Amendment—
>
> *The Court:* I have to tell you that it's at your own peril.
>
> [*Defendant*]: I understand that sir.
>
> *The Court:* I'll leave [defense counsel]. She can advise you. If you ask a question and it turns out that question is a bombardment, you're stuck with it.
>
> [*Defendant*]: Absolutely.
>
> *The Court:* I'm going to hold you to the same rules that the lawyers follow, do you understand that?
>
> [*Defendant*]: Absolutely.

Following the trial court's ruling, Sgt. Brown testified for the prosecution regarding the events leading to defendant's arrest. Defendant conducted

a lengthy cross-examination of the witness, the prosecution rested, and defendant presented his own case.

Defendant's first witness was his sister, Gina Ullah, who testified that on the night in question, her family had gathered for a reunion. At approximately 4:00 A.M., an older brother, Randy, came into the house, obviously intoxicated. Ullah did not see the car Randy was driving, but she asked defendant to go outside and move Randy's car.

Next, defendant took the witness stand on his own behalf, testifying that on the night in question he was attending the family reunion when his brother, Randy, came into the party, drunk. Defendant's sister asked him to move Randy's car. Randy told defendant that the car was black and the engine was running. Defendant went outside, observed a black Camaro with its engine running, entered the vehicle, and prepared to move it to another location. At that point the police closed in and arrested defendant. Defendant maintained that he was unaware that the vehicle was stolen.

On appeal as of right, defendant first argues that the trial court erroneously allowed defendant to represent himself at trial without making a determination with regard to whether defendant's decision was made knowingly, intelligently, and voluntarily. We agree.

Initially, we note that defendant failed to raise this issue before the trial court. As a general rule, this Court will not review an issue raised for the first time on appeal. *People v Calloway,* 169 Mich App 810, 818; 427 NW2d 194 (1988). However, where a significant constitutional question is presented, as in this case, appellate review is appropriate. *People v Davis,* 181 Mich App 354, 355; 448 NW2d 842 (1989).

When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." [*Faretta v California*, 422 US 806, 835; 95 S Ct 2525; 45 L Ed 2d 562 (1975). Citations omitted.]

A defendant has the right to represent himself under both the Michigan and United States Constitutions. Const 1963, art 1, § 13; US Const, Am VI. At the time of defendant's trial, MCR 6.101(C)(3) governed the applicable procedure to be utilized by a trial court *after* a defendant had waived his right to appointed counsel. However, that court rule was modified by MCR 6.005(D) which, according to the commentary, "pertains to the defendant's *initial* waiver of the right to be represented by a lawyer and addresses the defendant's constitutional right to self-representation. . . . The requirements of subrules (1) and (2) are intended to ensure that the defendant's decision to waive the right to representation and to proceed without a lawyer is an informed and voluntary one." (Emphasis supplied.) MCR 6.005(D) provides, in part:

The court may not permit the defendant to waive the right to be represented by a lawyer without first

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by

law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

Procedural rules changed by court rule or otherwise generally have prospective effect only. *Thompson v Thompson,* 112 Mich App 116, 119; 315 NW2d 555 (1982). However, interpretation of a court rule is subject to those principles governing statutory construction, *Taylor v Anesthesia Associates of Muskegon, PC,* 179 Mich App 384, 386; 445 NW2d 525 (1989), and remedial procedural rules should be broadly construed, *Tomlinson v Tomlinson,* 338 Mich 274, 280; 61 NW2d 102 (1953). Statutes which operate in furtherance of a remedy already existing and which neither create new rights nor destroy existing rights are held to operate retrospectively unless a contrary intent is manifested. *Spencer v Clark Twp,* 142 Mich App 63, 67-68; 368 NW2d 897 (1985). Here, we conclude that the modified court rule redresses an existing right and should be applied retroactively.

Furthermore, in *People v Anderson,* 398 Mich 361; 247 NW2d 857 (1976), our Supreme Court held that once a defendant has unequivocally declared his desire to proceed pro se, the trial court must determine whether the defendant is asserting his right knowingly, intelligently, and voluntarily:

The trial court must make the *pro se* defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open. [*Id.* at 368.]

In *People v Lopez,* 71 Cal App 3d 568, 571-572;

138 Cal Rptr 36 (1977), the California Court of Appeals noted:

> Whether the prospective pro per is a naive character who sincerely believes he can represent himself better than can a lawyer, a cagey loser who is going to try to reduce the trial to a shambles in the hope that somehow reversible error will creep in, a free soul with a touch of ham, or simply someone who wants to have some fun with the judicial establishment, the trial judge must recognize that the first ground on appeal is probably going to be that the defendant was allowed to represent himself without having intelligently and voluntarily made that decision. Such are the facts of life. Therefore, pragmatically, and defensively, in addition to the legal necessity of establishing that a defendant voluntarily and intelligently reached this decision, the trial court should also protect itself—and the record.

Therefore, facing a criminal defendant's demand to proceed pro se, the California appellate court suggested that, in making the defendant aware of the dangers and disadvantages of self-representation pursuant to the requirements articulated in *Faretta, supra,* the defendant be advised as follows:

> (a) That self-representation is almost always unwise and that he may conduct a defense "ultimately to his own detriment." (*Faretta, supra,* 422 US at p 834, 95 S Ct 2525.)
>
> (b) That he is entitled to and will receive no special indulgence by the court, and that he must follow all the technical rules of substantive law, criminal procedure and evidence in the making of motions and objections, the presentation of evidence, voir dire and argument. It should be made crystal clear that the same rules that govern an attorney will govern, control and restrict him—

and that he will get no help from the judge. He will have to abide by the same rules that it took years for a lawyer to learn.

(c) That the prosecution will be represented by an experienced professional counsel who, in turn, will give him no quarter because he does not happen to have the same skills and experience as the professional. In other words, from the standpoint of professional skill, training, education, experience, and ability, it will definitely not be a fair fight. . . .

(d) That he is going to receive no more library privileges than those available to any other pro per, that he will receive no extra time for preparation and that he will have no staff of investigators at his beck and call. [71 Cal App 3d 572-573.]

In the instant case, it is not clear from the record that the trial court made adequate assurances that defendant was asserting his right to self-representation knowingly, intelligently, and voluntarily. For instance, while the trial court advised defendant that proceeding pro se was perilous, the trial court did not explain the risks which accompany self-representation. Furthermore, it is apparent that defendant's decision was made hastily, in the middle of trial. Therefore, we conclude that because of the trial court's failure to set forth the disadvantages and dangers of pro se representation as required by court rule and case law, defendant did not effectively relinquish his fundamental right to counsel.

Second, defendant contends the trial court abused its discretion in limiting his cross-examination of Sgt. Brown. Specifically, defendant argues the trial court's ruling denied him his constitutional right to confront the witnesses against him. In light of our determination regarding defendant's first issue, it is unnecessary for us to ad-

dress defendant's second issue. Suffice it to say, the scope of cross-examination is a matter left to the sound discretion of the trial court, with due regard for a defendant's constitutional rights. *People v Grisham,* 125 Mich App 280, 284; 335 NW2d 680 (1983). After carefully reviewing the record, we find no abuse, but rather the sound exercise, of discretion by the trial court.

Reversed.