NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1199n.06

No. 11-1593

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Nov 20, 2012*
DEBORAH S. HUNT, Clerk

CHARLES BLUNT,

      Petitioner-Appellant,

        v.

JEFFREY WOODS,

      Respondent-Appellee.

On Appeal from the United
States District Court for the
Eastern District of Michigan

_____/

Before: **GUY, SUTTON, and COOK, Circuit Judges.**

**PER CURIAM.** Petitioner Charles Blunt, a state prisoner, appeals from the denial of his petition for writ of habeas corpus filed pursuant to 18 U.S.C. § 2254. Blunt was convicted of two counts of armed robbery, and one count each of bank robbery, being a felon in possession of a firearm, carrying a concealed weapon, second-degree fleeing a police officer, and possession of a firearm during the commission of a felony. On appeal, petitioner contends, as he did in the district court, (1) that he was denied his Sixth Amendment right to represent himself at trial; and (2) that his convictions for armed robbery and bank robbery violated the Double Jeopardy Clause of the Fifth Amendment because they arose from the same conduct. Finding no error, we affirm.

## I.

The convictions arose out of Blunt's robbery of a Citizen's Bank in Livonia, Michigan, on October 27, 2005. Blunt entered the bank and sat in the waiting area for a few minutes while bank employee Pamela Persha was with a customer at the front desk. Blunt went out and came back, by his own testimony, after retrieving a handgun from his car. The customer left Persha's desk and went into the office of a second bank employee, Gerri Kirkpatrick. While Persha was being assisted with her computer by a third bank employee, Carrie Coqswell, Blunt approached them, asked about making a withdrawal, and was given a withdrawal slip.[1] Blunt started to fill out the slip, but then took out a gun and pointed it at Persha and then Coqswell while demanding all the money or he would "blow her f**ing head off." Coqswell opened the money drawers and gave Blunt money, which included bait money and dye packs. Blunt then went into Kirkpatrick's office and demanded money from her. Coqswell dropped her keys and activated the silent alarm, which drew Blunt's attention briefly. But when Coqswell denied that she pushed the alarm, Blunt returned to Kirkpatrick's office where he took the money, including bait money, from the open money drawer.

After ordering everyone to get down on the floor, Blunt left by way of the front door. When Coqswell went outside to lock the front door, she saw Blunt leaving in a black BMW and was able to relay the license plate number to others who had called 911. A uniformed officer in a marked police car saw the black BMW stopped in traffic at a nearby intersection,

---

[1]He set a black planner down, which was left behind after the robbery, and a fingerprint found on a receipt inside was identified as belonging to Blunt.

activated his lights and siren, and pulled directly in front of the BMW. Other police cars joined in, but Blunt evaded by driving away in reverse. When the vehicle chase ended, Blunt fled on foot but was apprehended in a nearby backyard. Money, including dye packs and the bait money, were stuffed in Blunt's pants. A loaded handgun was found in the BMW.

During the bench trial, Blunt testified that he went to the bank to make a withdrawal, retrieved a gun from his car to "make them cooperate," and took money at gunpoint from both Coqswell and Kirkpatrick. However, he denied threatening to shoot anyone and claimed that he was trying to "withdraw" $10 million that belonged to him. Blunt also denied the officers were in uniform or had activated their lights or sirens, claiming that he ran out of fear of being robbed.

At the conclusion of the bench trial, Blunt was found guilty of two counts of armed robbery, and one count each of bank robbery, second-degree fleeing an officer, felon in possession of a firearm, carrying a concealed weapon, and felony firearm. Blunt was subsequently sentenced as a fourth habitual offender to concurrent terms totaling 40 to 80 years of imprisonment. On appeal, the Michigan Court of Appeals rejected on the merits both claims raised in this petition. *People v. Blunt*, No. 272632, 2007 WL 2549867 (Mich. App. Sept. 6, 2007) (unpublished). An application for leave to appeal to the Michigan Supreme Court was denied because the court was not persuaded that the questions presented should be reviewed. *People v. Blunt*, 743 N.W.2d 22 (Mich. Jan. 8, 2008).

On November 17, 2008, Blunt filed a timely pro se petition for writ of habeas corpus that raised the double jeopardy and self-representation claims rejected by the state courts.

The district court denied the petition for writ of habeas corpus and denied a certificate of appealability. *Blunt v. Berghuis*, No. 4:08-cv-14808, 2011 WL 1330754 (E.D. Mich. April 5, 2011). This court subsequently granted a certificate of appealability and appointed counsel to represent petitioner in this appeal.

## II.

There is no dispute that the petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), or that the claims were adjudicated on the merits by the state courts. As a result, the writ of habeas corpus may not be granted unless the state court's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citation omitted). We review the district court's application of this standard de novo, and its factual findings for clear error. *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (en banc), *cert. denied*, 132 S. Ct. 1927 (2012).

## A.     Sixth Amendment

Under the Sixth and Fourteenth Amendments, a defendant has a federal constitutional right "to proceed *without* counsel when he voluntarily and intelligently elects to do so." *Faretta v. California*, 422 U.S. 806, 807 (1975). The defendant must be "made aware of the

dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id*. at 835 (citation omitted). The right of self-representation is not absolute. *See Martinez v. Court of Appeal of California*, 528 U.S. 152, 161 (2000) (no right of self-representation on direct appeal); *McKaskle v. Wiggins*, 465 U.S. 168, 178-79 (1984) (appointment of standby counsel over defendant's objection is permissible). It also is not "license to abuse the dignity of the courtroom" or "not to comply with relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 834 n.46.

On the morning of trial, Blunt addressed the trial judge directly to ask whether he could insist on a line-up identification and whether he could represent himself. The trial judge inquired further and engaged in a colloquy with Blunt about the reasons for his request and the pitfalls of self-representation that included explaining why he could not make a motion to dismiss for lack of evidence after waiving the preliminary examination; probing his misunderstanding that the plea offer represented an above-guidelines sentence; and explaining that it was the prosecutor's decision to charge both bank robbery and armed robbery. Blunt also disingenuously claimed to have successfully represented himself in another case, but conceded that the conviction had actually been reversed on appeal. *See People v. Blunt*, 473 N.W.2d 792 (Mich. App. 1991) (reversing because the trial court erred in allowing defendant to represent himself).

Once it was determined that Blunt would proceed to trial, the court ruled on Blunt's request to represent himself, finding that—although voluntary—the earlier colloquy raised

"very real concerns" about whether waiver of the right to counsel was knowing and intelligent. The trial court also found that Blunt's self-representation could become an undue burden on the court emphasizing that a competency examination had found Blunt was malingering and fabricating mental illness; Blunt had already asked the court to secure the appearance of Saddam Hussein as a defense witness; and Blunt had to be persuaded on the day of trial that he should change into civilian clothes. The court of appeals concluded that the trial court did not clearly err in finding that Blunt's waiver was not knowing and intelligent. This determination—whether right or wrong—did not involve an objectively unreasonable application of Supreme Court precedent. *See Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010). Nor was it objectively unreasonable to conclude that "the government's interest in ensuring the integrity and efficiency of the trial" outweighed Blunt's "interest in acting as his own lawyer." *Martinez*, 528 U.S. at 162.

## B.     Double Jeopardy

The Fifth Amendment's Double Jeopardy Clause "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *see also Ohio v. Johnson*, 467 U.S. 493, 499 (1984). It does not prohibit a state "from defining conduct to constitute two separate criminal offenses." *White v. Howes*, 586 F.3d 1025, 1028 (6th Cir. 2009) (citing *Hunter*, 459 U.S. at 368-69).

Here, the Michigan Court of Appeals applied the federal "same elements" test of

*Blockburger v. United States*, 284 U.S. 299, 304 (1932), in determining that the Michigan

Legislature intended multiple punishments for the same conduct in a prosecution for both

bank robbery in violation of MCLA § 750.531, and armed robbery in violation of MCLA §

750.529. *Blunt*, 2007 WL 2549867, at *1-2 (citing *People v. Smith*, 733 N.W.2d 351, 368-69

(Mich. 2007) (adopting *Blockburger* test)).  There is no dispute that, as the state court

concluded, the "offenses of bank robbery and armed robbery each contain an element that

the other does not."  *Id*. at *2 (relying on *People v. Ford*, 687 N.W.2d 119, 127-28 (Mich.

App. 2004)); *accord People v. McMahon*, No. 302037, 2012 WL 3020391 (Mich. App. July

24, 2012).  The court in *Ford* also found that the legislature intended these statutes to impose

multiple punishments given that they address different social norms and are subject to

disparate sentencing treatment.  *Ford*, 687 N.W.2d at 127.

Although Blunt asserts that the legislative history does not clearly establish an intent

to authorize multiple punishments for the conduct at issue, this court has recognized that

"when evaluating whether a state legislature intended to prescribe cumulative punishments

for a single criminal incident, a federal court is bound by a state court's determination of the

legislature's intent."  *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) (citing *Johnson*,

467 U.S. at 499); *see also White*, 586 F.3d at 1031.  The district court in this case did not err

in finding that the federal courts must defer to the Michigan court's determination that the

Michigan Legislature intended to allow multiple punishment for the same conduct as bank

robbery and armed robbery.  Petitioner cannot establish entitlement to habeas relief with respect to this claim.

**AFFIRMED.**