# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID WILSON,

        Defendant-Appellant.

UNPUBLISHED
March 24, 2015

No. 319418
Wayne Circuit Court
LC No. 13-001466-FC

Before: DONOFRIO, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Defendant, David Wilson, appeals as of right his jury trial convictions of assault with a dangerous weapon (felonious assault), MCL 750.82, felon in possession of a firearm (felon in possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of four to eight years for felonious assault, 76 to 120 months for felon in possession, and five years for felony-firearm. We reverse.

## I. FACTUAL BACKGROUND

## A. THE SHOOTING

Defendant's niece rented a house from the victim. When the victim was attempting to evict her from the house, she was uncooperative. During a verbal altercation, she ordered the landlord to exit the premises. The victim complied and went and sat in his car and called the police. While the victim waited for the police to arrive, defendant drove up to the house and went inside. After some period of time, defendant then left the house and approached the victim who was still sitting in his car. Defendant walked toward the driver's side of the car with his right hand in his coat pocket and proceeded to ask the victim why he was bothering his niece.

Although the victim denied accusations that he was bothering defendant's niece when trying to expedite her removal from the premises, defendant ordered the victim out of the car anyway. When the victim refused to exit the car, defendant forcefully opened the car's door. Defendant and the victim began to struggle over the door. Defendant then pulled a gun from his coat pocket. After seeing the gun, the victim drove away. Defendant then shot the gun twice at the moving car. One bullet struck the victim in the elbow, and the other struck near the car's gas

-1-

tank.  Later, after the victim arrived at a hospital for treatment, he identified defendant as the shooter from a police photograph lineup.

Defendant was charged with assault with intent to murder, MCL 750.83, assault with intent to do great bodily harm less than murder, MCL 750.84, felonious assault, MCL 750.82, felon in possession, MCL 750.224f, and felony-firearm, MCL 750.227b.

## B.  SELF-REPRESENTATION

The case eventually proceeded to trial and on the first day, an issue arose regarding self-representation.  The following conversation between defendant, the court, and the prosecution ensued:

> *Defendant*:  Your Honor, I would like to, on June the 10th, you stated to me that I was not allowed to change attorneys.
>
> *The Court*:  That's correct.
>
> *Defendant*:  Okay, well, at this time, I don't want him to represent me and I have a reason for that because one, over a period of time he failed to answer any of my calls when I was trying to get him to file a motion, that I asked him to file a motion back in July for a violation of speedy trial due process and a motion for regarding [sic] bond and the hundred and eighty day rule.  And beyond that–
>
> \* \* \*
>
> *Defendant*:  Okay, misstating it, he didn't file a motion for that and I had requested he communicate with me.  Now as of now [sic], everything that I ask him to do it seems like he's rejecting and now I feel he doesn't have my best interest at heart.  And therefore, I'm not willing or prepared to let him represent me in this case cause [sic] my life is at stake.  Everything I say, it seems like the prosecution, whatever the prosecution wants is what he wants, too.  And I'm not, I can't agree with that.
>
> *The Court*:  Motion for a new lawyer is denied.  You can bring–
>
> *Defendant*:  I didn't say for a new lawyer, I just don't want him.  If I have to represent myself, then I'll do that.
>
> *The Court*:  Well, that requires me to read, so you understand that you're charged with a life offense?
>
> *Defendant*:  Yes, I do.
>
> *The Court*:  And you understand you're also charged with a felony firearm second offense punishable by a mandatory five years in prison?
>
> *Defendant*:  Yes, I do.

> *The Court*: And I certainly have no intention of prohibiting you from representing yourself. [Prosecutor], what else must the defendant be asked?

> *Prosecutor*: I, in my experience, I haven't had anybody represent themself– [sic]

> *The Court*: Okay, so count one, assault with intent to murder, the punishment is up to life in prison. And do you know the guidelines?

> *Defendant*: Not really.

> *The Court*: And what are the guidelines, [Prosecutor]?

> *Prosecutor*: I calculate them as a habitual offender, a hundred seventy one months to two hundred and eighty five months, excuse me, with a habitual, we go up to five hundred and seventy months. Again, that's fourteen years, three months at the low end. The high end is a little bit less than fifty years, forty–

> *The Court*: Do you understand that if you're convicted of the offenses, you could be subject to a minimum sentence of up to fifty years plus five years for the felony firearm?

> *Defendant*: Yes.

> *The Court*: And you still wish to represent yourself?

> *Defendant*: Yes, I do.

> *The Court*: Bring the jury.

The trial court then instructed defense counsel that he would "have to stay . . . to be stand by for advice" and voir dire commenced.

Defendant was convicted of felonious assault, felon in possession, and felony-firearm. Defendant now appeals on several grounds.

## II. SELF REPRESENTATION

### A. STANDARD OF REVIEW

Defendant contends that the trial court erred in denying his request for substitute counsel and forcing him to represent himself. Defendant argues that this violated his fundamental right of counsel, *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), and MCR 6.005(D).

"We review for clear error the trial court's factual findings surrounding a defendant's waiver." *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). To the extent that such "a ruling

involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *Russell*, 471 Mich at 187.

## B.  LEGAL BACKGROUND

"The Sixth Amendment safeguards the right to counsel at all critical stages of the criminal process for an accused who faces incarceration." *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004).  This right is applicable to the states through the Fourteenth Amendment.  *Id.*  As the United States Supreme Court has cautioned, courts should "indulge every reasonable presumption against waiver of fundamental constitutional rights."  *Id.* (quotation marks and citation omitted).  Nevertheless, a criminal defendant may choose to waive representation, as constitutional protections are not meant to force a lawyer upon a defendant. *Id.*  "In sum, although the right to counsel and the right of self-representation are both fundamental constitutional rights, representation by counsel, as guarantor of a fair trial, is the standard, not the exception, in the absence of a proper waiver."  *Russell*, 471 Mich at 189-190 (quotation marks and citation omitted).

When a defendant indicates that he wishes to proceed *in propria persona*, the trial court must determine whether: (1) the defendant's request was unequivocal, (2) the defendant was asserting his right knowingly, intelligently, and voluntarily, which the court discerns through a colloquy in which it advises the defendant of the dangers and disadvantages of self-representation; and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business.  *Russell*, 471 Mich at 190; *Anderson*, 398 Mich at 367.[1]

A trial court also must satisfy the requirements of MCR 6.005(D).  *Russell*, 471 Mich at 190.  MCR 6.005(D) provides that "[t]he court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first:"

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

In evaluating whether a trial court properly adhered to the standards articulated *supra*, Michigan courts have rejected the "litany approach" in favor of the "substantial compliance" standard.  *Russell*, 471 Mich at 191.  "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures."  *Id.* (quotation marks and citation omitted).  If a court is unsure if

---

[1] These will be referred to as the *Anderson* factors.

the waiver requirements have been satisfied, it should rule in favor of denying defendant's request for self-representation. *Id.*

## C. APPLICATION IN THIS CASE

Regarding the first prong of the waiver procedures, defendant's request for self-representation was unequivocal. *Russell*, 471 Mich at 190. After the trial court assumed defendant merely wanted different counsel, defendant clarified that was not his request and that if he had to represent himself, he would. After further conversation about two of the charges, defendant unequivocally voiced his desire to represent himself. However, as defendant argues on appeal, the trial court failed to make any findings regarding whether his request was unequivocal.[2]

Moreover, the trial court failed to satisfy the second prong, namely, ensuring that "the defendant is asserting his right knowingly, intelligently, and voluntarily," which the court should have determined "through a colloquy advising the defendant of the dangers and disadvantages of self-representation." *Russell*, 471 Mich at 190. The trial court did not make "adequate assurances that defendant was asserting his right to self-representation knowingly, intelligently, and voluntarily." *People v Blunt*, 189 Mich App 643, 650; 473 NW2d 792 (1991). The trial court did not mention these factors, let alone conduct any type of searching inquiry into defendant's request. In fact, on the record, the trial court seemed unaware of its obligation to do so. After merely informing defendant that he was charged with a "life offense" and felony-firearm, the trial court then asked the prosecution, "[W]hat else must the defendant be asked?" The prosecution stated that it had not encountered a defendant who sought to represent himself.

While the trial court may not have "forced" defendant to represent himself, as defendant contends, it woefully failed to warn him of the potential perils, pitfalls, and risks of self-representation. See, e.g., *People v Kimber*, 133 Mich App 184, 189; 348 NW2d 60 (1984) ("[S]omething of the special skills and training necessary to effectively handle a criminal defense must be conveyed to the defendant."). As the United States Supreme Court has explained, "Warnings of the pitfalls of proceeding to trial without counsel . . . must be rigorously conveyed." *Iowa v Tovar*, 541 US 77, 89; 124 S Ct 1379, 1388; 158 L Ed 2d 209 (2004) (quotation marks and citation omitted). The trial court in this case did not even inform defendant that self-representation could be "perilous." *Blunt*, 189 Mich App at 650. The court did not, for example, warn defendant of any of the following: (1) that self-representation was unwise; (2) that he would receive no special indulgences from the court; (3) that he must follow all the technical rules of substantive law, criminal procedure, evidence, voir dire, or argument; (4) that he would be required to follow the same rules that govern a licensed attorney; (5) that he would receive no special assistance from the judge; (6) that he would receive no quarter from the prosecution; or (7) that he would receive no extra privileges than those available to others proceeding *in propria persona*. See *Blunt*, 189 Mich App at 649-650. The trial court merely

---

[2] Although defendant focuses on his initial statement, namely, "if he had to" he would represent himself, further discussion ensued and defendant unequivocally expressed his desire for self-representation.

listed some of the charges and penalties, and indicated that it "certainly" had "no intention of prohibiting [defendant] from representing [himself.]"

Although the prosecution argues that the trial court's statements during the second day of trial were sufficient, the issue in this case is whether the *initial* waiver was defective. See *Gomez v United States*, 490 US 858, 873; 109 S Ct 2237; 104 L Ed 2d 923 (1989) (referring to "*voir dire* as a critical stage of the criminal proceeding."). See also *Powers v Ohio*, 499 US 400, 412; 111 S Ct 1364; 113 L Ed 2d 411 (1991) ("The influence of the *voir dire* process may persist through the whole course of the trial proceedings."). Furthermore, the trial court's statements on the second day of trial did not constitute substantial compliance with *Anderson*. The court merely informed defendant that he was bound by the rules of evidence and court rules, that the court would decide objections and inform the parties when to move on, and that opening statements were limited to 10 minutes. The court again referenced only two of the charges against defendant. The court never cautioned defendant that self-representation could be dangerous or that it may place him at a disadvantage. *Russell*, 471 Mich at 190. The court did not allude to any perils, risks, pitfalls, or special skills that self-representation would entail. *Kimber*, 133 Mich App at 189. As our Supreme Court has recognized, at the very least, the "defendant must be warned *specifically* of the hazards ahead." *Russell*, 471 Mich at 193 n 27 (emphasis in original) (quotation marks and citation omitted).

Lastly, the trial court failed to comply with the third prong of the waiver procedures. The court did not articulate any findings that defendant's self-representation would not disrupt, unduly inconvenience, or burden the court and the administration of the court's business. *Russell*, 471 Mich at 190. The record simply is devoid of any reference to this factor.

Nor did the trial court substantially comply with the requirements of MCR 6.005(D). Although it ordered defense counsel to remain as standby counsel, MCR 6.005(D)(2), the trial court did not inform defendant of all the charges against him, as it mentioned only assault with intent to murder and felony-firearm. MCR 6.005(D)(1). It failed to mention the lesser included charges—assault with intent to do great bodily harm and felonious assault—and did not mention felon in possession. The trial court also failed to inform defendant of the maximum and minimum sentences for those three charges. Nor did it endeavor to apprise defendant of any of the risks involved with self-representation, as discussed *supra*. MCR 6.005(D)(1).

In light of the foregoing, we find that the trial court did not substantially comply with the *Anderson* factors or MCR 6.005(D). Moreover, because this case involves the initial waiver of counsel, prejudice is not a required showing. *People v Willing*, 267 Mich App 208, 224-225; 704 NW2d 472 (2005). While defense counsel was present for the trial, conducted voir dire, and assisted in cross-examining a few witnesses, "the presence of standby counsel does not legitimize a waiver-of-counsel inquiry that does not comport with legal standards." *Id.* at 228 (quotation marks and citation omitted). We also note that the deprivation of counsel pervaded the entire trial, "which is clearly a critical stage of the proceedings." *Russell*, 471 Mich at 188; *Willing*, 267 Mich App at 224, 229.

This complete deprivation of counsel at a critical stage of the proceeding is structural error, and reversal is required. *Willing*, 267 Mich App at 224. Because our analysis of this issue is dispositive, we decline to address defendant's alternate arguments on appeal.

## III.  CONCLUSION

Defendant did not effectuate a proper waiver of counsel at trial.  We reverse.

/s/ Pat M. Donofrio
/s/ Michael J. Riordan
/s/ Michael F. Gadola