*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 25, 2019

Plaintiff-Appellee,

v

No. 342613
Lapeer Circuit Court
LC No. 16-012503-FC

JOSHUA JERROLD TIETZ,

Defendant-Appellant.

Before: BORRELLO, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

Defendant appeals by leave granted his guilty-plea convictions of two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with another person under 13 years of age).[1] The trial court sentenced defendant to a term of 7 to 15 years of imprisonment for each count of CSC-II. After it entered the original judgment of sentence, the trial court entered an amended judgment of sentence that indicated that defendant was subject to lifetime electronic monitoring as part of his sentence. Defendant challenges the trial court's entry of the amended judgment of sentence. Because we conclude that the trial court's correction of the original invalid sentence was governed by the amended language of MCR 6.429, we affirm.

## I. BACKGROUND

On November 5, 2015, the prosecutor filed a felony complaint charging defendant with two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and two counts of CSC-II. Defendant's two younger sisters were the victims of his sexual assaults. On the original felony complaint, the prosecutor alleged that the sexual assaults occurred on or about January 1, 2000. On February 19, 2016, the prosecutor filed a revised felony information that

---

[1] See *People v Tietz,* unpublished order of the Court of Appeals, entered April 20, 2018 (Docket No. 342613).

contained the same four charges, and that information continued to allege that the offenses occurred on or about January 1, 2000, at which time defendant was 11 years old and his sisters were both younger than 13 years old.

Both victims testified in detail at defendant's preliminary examination, and both testified to a repeated course of conduct in which defendant committed acts of criminal sexual conduct against them, beginning when the victims were five or six years old, and continuing until they were 11 or 12 years old. These acts of criminal sexual conduct included acts that would clearly constitute CSC-I, and the victims testified that these acts occurred on a daily or weekly basis over the course of multiple years. Both victims testified that they informed their parents that defendant was sexually assaulting them, but that their parents took no action to protect them and that defendant's sexual assaults continued after they asked their parents for help and protection. Some of the sexual assaults described by the victims occurred in Lapeer County and some occurred in other jurisdictions. According to the victims, defendant's sexual assaults continued, on a daily or weekly basis, over the course of multiple years, until defendant was older than 17 years old.

On March 27, 2017, defendant pleaded guilty to two counts of CSC-II (one count for each victim), in exchange for the prosecutor's dismissal of the two counts of CSC-I. At the plea hearing, defendant admitted that, on or about January 1, 2000, he touched the two victims' genitals with his hand for a sexual purpose, and he admitted that both of the victims were younger than 13 years old when he did so. When the trial court asked defendant whether he was at least 17 years old when he sexually assaulted his sisters, defendant consulted with his attorney, counsel for both parties held a sidebar conference with the trial court, and the trial court announced a 10-minute break in proceedings. When the plea hearing resumed, the trial court acknowledged that defendant was only 11 or 12 years old on the date alleged in the information, and acknowledged that it was a "legal fiction" to claim that defendant was at least 17 years old on that date. Defendant then acknowledged, only "for purposes of taking the plea," that he was at least 17 years old when he sexually assaulted his sisters.

Counsel for both parties agreed that the prosecutor would dismiss Counts I and II (both CSC-I) if defendant pleaded guilty to Counts III and IV (both CSC-II). The trial court then explained to defendant the possible punishment that could be imposed by the trial court, if defendant pleaded guilty. The trial court explained:

> And, again, I didn't read you the maximum punishment under Count 1 or Count 2, because they're the same thing, but the maximum punishment is as follows: That this is a tier 3 offense under the Sex Offender's Registration Act, unless the Court finds that the victim was between the ages of 13 and 15 inclusive, and consented to the conduct; and that you are not more than four years older than the victim.

\* \* \*

> It also indicates that the sentence would be life, mandatory lifetime electronic monitoring, mandatory [AIDS] and STD testing. DNA is to be taken

upon arrest, and the Court may impose consecutive sentences. Again, that's the same penalty under Counts 1 and 2.

In regard to Count 3, it does allege that you, being 17 years of age or older, did engage in sexual contact with a person under 13 years old, and that individual's initials are J.M.T. Again, this is a tier 3 offense. Under the Sex Offender's Registration Act, it carries with it up to 15 years in prison and lifetime electronic monitoring upon parole from prison. There would be mandatory [AIDS] and STD testing, and DNA is [to] be taken upon arrest.

Under Count 4, again, that you being 17 years of age or older did engage in sexual contact with a person under 13 years of age, initials S.J.T. Again, this is a tier 3 offense under the Sex Offender's Registration Act. That carries with it up to 15 years in prison and lifetime electronic monitoring upon parole from prison. There would be mandatory [AIDS], STD testing, DNA to be taken upon arrest. And upon conviction of a felony or attempted felony, the court shall order law enforcement to collect DNA identification profiling samples from you.

After receiving this information regarding the possible punishment that could be imposed by the trial court, including the information about lifetime electronic monitoring, defendant pleaded guilty to the two counts of CSC-II.

On May 22, 2017, the trial court held defendant's sentencing hearing. At that time, defense counsel requested, and the prosecutor agreed, that the offense date listed on the presentence investigation report (PSIR) be changed from January 1, 2007, to January 1, 2000, because the felony information indicated that the charged offenses occurred on or about January 1, 2000. The trial court ordered the amendment of the PSIR to reflect that the offenses occurred on or about January 1, 2000. The trial court then sentenced defendant to a term of 7 to 15 years of imprisonment for each conviction of CSC-II. The trial court failed to mention lifetime electronic monitoring at the sentencing hearing, and the trial court did not indicate on the original judgment of sentence that lifetime electronic monitoring was part of defendant's sentence.

Because the judgment of sentence listed the offense date as January 1, 2000, on which date defendant was 11 years old, the Department of Corrections (DOC) refused to take custody of defendant, taking the position that the sentence appeared to be invalid on its face because an 11-year-old defendant could not be sentenced as an adult. As a result of the DOC's refusal to take custody of defendant, on May 31, 2017, the trial court held a hearing during which the prosecutor orally moved to amend the felony information. The prosecutor moved to amend the offense date on the information from on or about January 1, 2000, to a date range of on or about January 1, 2000, through May 18, 2008. The prosecutor also requested that the trial court change the offense date on the PSIR back to January 1, 2007, the date that the PSIR originally stated, because defendant was only 11 years old in 2000, but he was older than 17 years old in 2007. Over defendant's objection, the trial court granted the prosecutor's request to file the amended information and stated that the amended document was incorporated "into the plea-taking process and into the sentencing process" that had already occurred. The trial court, however, clarified that "the Court's sentencing would be exactly the same." Later that day, the prosecutor filed the amended information. The trial court then entered an amended judgment of sentence

that ordered lifetime electronic monitoring, despite the fact that the original judgment of sentence did not include lifetime electronic monitoring and the prosecutor did not move to add the monitoring.

Defendant subsequently filed a motion in the trial court to correct the amended judgment of sentence, arguing that it was an invalid sentence. Defendant argued that the trial court erred when it ordered lifetime electronic monitoring in the amended judgment of sentence. At the hearing on that motion, defendant argued that the trial court's amended judgment of sentence was invalid under our Supreme Court's holding in *People v Comer*, 500 Mich 278; 901 NW2d 553 (2017). Defendant, therefore, requested that the trial court reinstate the original judgment of sentence, which did not include lifetime electronic monitoring.

The trial court stated that it made a clerical error when it initially failed to check the box ordering lifetime electronic monitoring on the original judgment of sentence, and concluded that it could correct that clerical error at any time under MCR 6.435(A). The trial court reasoned that, unlike in *Comer*, it had stated on the record, at the time defendant pleaded guilty to sexually assaulting his sisters, that lifetime electronic monitoring would be required. Therefore, the trial court denied defendant's motion to reinstate the original judgment of sentence, which did not include lifetime electronic monitoring.

II. ANALYSIS

On appeal, defendant argues that the trial court erred when it entered the amended judgment of sentence ordering lifetime electronic monitoring. Defendant argues that he is not subject to mandatory lifetime electronic monitoring under the statute because he was a minor when he committed the crimes. He also argues that, even if he was otherwise subject to such monitoring, under our Supreme Court's holding in *Comer*, the trial court lacked authority to amend the judgment of sentence, absent a motion from one of the parties. As explained below, we conclude that defendant's arguments ultimately fail.

A. DEFENDANT'S AGE

Defendant first argues that he is not subject to mandatory lifetime electronic monitoring because he admitted "for purposes of the plea only" that he was at least 17 years of age or older when he repeatedly subjected his sisters to sexual assaults. Defendant pleaded guilty to two counts of CSC-II, MCL 750.520c(2)(b), which states that a trial court "shall sentence the defendant to lifetime electronic monitoring under section 520n if the violation involved sexual contact committed by an individual 17 years of age or older against an individual less than 13 years of age." Defendant essentially argues that, if he did not commit a sexual assault against either victim after he turned 17 years old, the trial court was not required to sentence him to lifetime electronic monitoring. We decline to address defendant's argument that he was younger than 17 years old when he sexually assaulted his sisters because he did not raise this argument in his delayed application for leave to appeal. See *People v Tietz*, unpublished order of the Court of Appeals, entered April 20, 2018 (Docket No. 342613), limiting the appeal "to the issues raised in the application and supporting brief." *Id*. Because defendant did not raise this argument in his application for leave to appeal, he has waived appellate review of this issue. See *People v Axley*, 477 Mich 878; 721 NW2d 597 (2006).

## B. RETROACTIVE APPLICATION OF COURT RULES

### 1. STANDARD OF REVIEW AND APPLICABLE COURT RULES

Turning to the claim that defendant did raise in his application for leave to appeal, MCR 6.435 and MCR 6.429 are the court rules relevant to resolving the claim. "The interpretation of court rules is a question of law that this Court reviews de novo." *People v Walters*, 266 Mich App 341, 346; 700 NW2d 424 (2005). MCR 6.435 provides in relevant part:

(A) Clerical Mistakes. Clerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party, and after notice if the court orders it.

(B) Substantive Mistakes. After giving the parties an opportunity to be heard, and provided it has not yet entered judgment in the case, the court may reconsider and modify, correct, or rescind any order it concludes was erroneous.

When the trial court entered the original judgment of sentence and the amended judgment of sentence, MCR 6.429 provided in relevant part:

(A) Authority to Modify Sentence. A motion to correct an invalid sentence may be filed by either party. The court may correct an invalid sentence, but the court may not modify a valid sentence after it has been imposed except as provided by law.

(B) Time for Filing Motion.

(1) A motion to correct an invalid sentence may be filed before the filing of a timely claim of appeal.

(2) If a claim of appeal has been filed, a motion to correct an invalid sentence may only be filed in accordance with the procedure set forth in MCR 7.208(B) or the remand procedure set forth in MCR 7.211(C)(1).

(3) If the defendant may only appeal by leave or fails to file a timely claim of appeal, a motion to correct an invalid sentence may be filed within 6 months of entry of the judgment of conviction and sentence.

(4) If the defendant is no longer entitled to appeal by right or by leave, the defendant may seek relief pursuant to the procedure set forth in subchapter 6.500.

Less than two months after the trial court's sentencing decision in this case, the Michigan Supreme Court issued its opinion in *Comer*. In that case, the defendant was convicted of CSC-I, but the trial court failed to order lifetime electronic monitoring on the original judgment of sentence, even though lifetime electronic monitoring was statutorily mandated under the circumstances of the case. *Comer,* 500 Mich at 292. The trial court in that case, on its own

-5-

initiative, entered an amended judgment of sentence that included lifetime electronic monitoring, in an attempt to include the statutorily mandated punishment. *Id*. at 292-293.

On appeal, the Supreme Court concluded that the trial court's original sentence, which failed to include lifetime electronic monitoring, was invalid because it failed to include this statutorily mandated punishment. *Id*. at 292. The Supreme Court then turned to "whether the trial court was authorized to amend defendant's judgment of sentence on its own initiative 19 months after judgment on the sentence had entered." *Id*. at 292-293. Reading MCR 6.435 and MCR 6.429 together, the Supreme Court acknowledged that a trial court "may correct a clerical mistake on its own initiative at any time, including after a judgment has entered." *Id*. at 293. Because the parties in that case did not argue that the trial court's original failure to sentence defendant to lifetime electronic monitoring was a clerical mistake, *id*., the Supreme Court proceeded to consider whether a trial court may correct a substantive mistake, on its own initiative, in the absence of a motion filed by either party, *id*. at 294. Ultimately, the *Comer* Court concluded that the version of MCR 6.429 in effect at that time did not allow a trial court, on its own initiative, to correct a substantive mistake in a judgment of sentence after judgment was entered. *Id*. at 297-298. The Supreme Court then held that the proper remedy for this situation was to vacate the amended judgment of sentence and remand for reinstatement of the original invalid sentence. *Id*. at 301.

In response to *Comer*, the Michigan Supreme Court amended MCR 6.429, effective September 1, 2018, to provide a trial court the authority to correct an invalid sentence on the court's own initiative. The rule now provides:

> (A) Authority to Modify Sentence. The court may correct an invalid sentence, on its own initiative after giving the parties an opportunity to be heard, or on motion by either party. But the court may not modify a valid sentence after it has been imposed except as provided by law. Any correction of an invalid sentence on the court's own initiative must occur within 6 months of the entry of the judgment of conviction and sentence.

In this case, the trial court entered the amended judgment of sentence on May 31, 2017, meaning that the version of MCR 6.429 that the Michigan Supreme Court interpreted in *Comer* was still in effect at the time of defendant's sentencing, and the revised version of MCR 6.429 giving a trial court the ability to correct an invalid sentence on its own initiative was not yet in effect.

Now that our Supreme Court has amended MCR 6.429, the questions before this Court are whether the amended court rule applies retroactively to the trial court's actions in this case and, if it does, whether the amended court rule authorized the trial court's addition of lifetime electronic monitoring to correct the original invalid sentence that erroneously omitted that statutorily mandated punishment.

### 2. CLERICAL OR SUBSTANTIVE ERROR

Defendant claims that a trial court's failure to impose lifetime electronic monitoring, as mandated by the Legislature for a person convicted of CSC-II in the circumstances presented

here, is a substantive mistake. Defendant argues that, when a trial court makes no reference to lifetime electronic monitoring at the sentencing hearing, the failure to sentence a defendant to such monitoring is a substantive mistake, and a motion from one of the parties is necessary to correct it. We agree that the trial court's initial failure to impose lifetime electronic monitoring on the original judgment of sentence was a substantive mistake, not a clerical one.[2]

Subsequent to the issuance of its decision in *Comer*, the Supreme Court has indicated, in multiple orders, that "correcting an invalid sentence by adding a statutorily mandated term is a substantive correction that a trial court may make on its own initiative only before judgment is entered." See, e.g., *People v Warrick*, 501 Mich 920; 903 NW2d 552 (2017). More specifically, the Supreme Court has held that a trial court's failure to impose lifetime electronic monitoring is a substantive error that can "only be corrected by the trial court on its own initiative before judgment is entered." *People v Thompson*, 501 Mich 873, 873-874; 901 NW2d 859 (2017). These cases, however, all involved the application of the former language of MCR 6.429, not the amended language. Because the Supreme Court changed the requirements for a trial court to correct an invalid sentence on its own initiative when it amended MCR 6.429, we must examine whether the amended version of MCR 6.429 applies retroactively to this case and whether the trial court's correction of the invalid sentence complied with the requirements of that amended court rule.[3]

### 3. RETROACTIVE APPLICATION OF THE AMENDED COURT RULE

After oral argument on appeal, this Court ordered the parties to submit supplemental briefing addressing the retroactive application of the amended court rule. Having considered the parties' supplemental arguments, we conclude that the amended version of MCR 6.429 retroactively applies to the trial court's sua sponte amendment of the judgment of sentence.

New and amended court rules generally apply to *all* proceedings in actions brought on or after the effective date, as well as pending cases, unless the application of the amended rule would not be feasible or would work injustice. See MCR 1.102; *Reitmeyer v Schultz Equip &*

---

[2] On this point, the majority and dissenting opinions agree—the trial court's mistake was substantive.

[3] The dissent argues that this opinion casts aside the Michigan Supreme Court's decision in *Comer* under the erroneous belief that this Court is not bound by that decision. To the contrary, we recognize the applicability of our Supreme Court's decision in *Comer*—to the proper interpretation and application of the former version of MCR 6.429. We agree that, if the former version of the court rule applies in this case, the trial court lacked the ability to correct its substantive error, for the reasons explained in *Comer*. Yet, our Supreme Court subsequently amended MCR 6.429, in response to its decision in *Comer*, to provide a trial court the authority to correct an invalid sentence on the trial court's own initiative. Our task in this case is to determine whether the court rule, as amended by our Supreme Court, changes the proper resolution of this case. We agree that it does.

*Parts Co, Inc*, 237 Mich App 332, 337; 602 NW2d 596 (1999). A case is pending when it is still on direct review. See *People v Sexton*, 458 Mich 43, 54; 580 NW2d 404 (1998).

Although the dissent criticizes our reliance on *Reitmeyer*, that opinion was issued after November 1, 1990, and a panel of this Court "must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, and has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals." See MCR 7.215(J)(1). *Reitmeyer* considered whether the original or an amended version of MCR 2.504, relating to offers of judgment, applied in that case. The trial court in *Reitmeyer* applied the amended court rule to deny a motion for costs, reasoning that "procedural rules are to operate retrospectively in the absence of a clear contrary intention." *Reitmeyer*, 237 Mich App at 336. On appeal, this Court noted that "this is not the proper analysis with respect to court rules, because MCR 1.102 provides its own specific rules for the adoption of new and amended court rules that should take precedence over the generalized rules of retrospectivity and prospectivity." *Id*. at 337.

MCR 1.102 provides:

These rules take effect on March 1, 1985. They govern all proceedings in actions brought on or after that date, and all further proceedings in actions then pending. A court may permit a pending action to proceed under the former rules if it finds that the application of these rules to that action would not be feasible or would work injustice.

As explained by the *Reitmeyer* Court, "Although MCR 1.102 was originally a transitional provision for the introduction of the court rules, the same principle has been applied to subsequently adopted or amended rules." *Reitmeyer*, 237 Mich App at 337, citing 1 Dean & Longhofer, Michigan Court Rules Practice (4th ed.), pp. 4–5 (cleaned up). "Thus, 'the norm is to apply the newly adopted court rules to pending actions unless there is reason to continue applying the old rules.'" *Reitmeyer*, 237 Mich App at 337, quoting *Davis v O'Brien*, 152 Mich App 495, 500; 393 NW2d 914 (1986).

The dissent cites *Reitmeyer*'s discussion of *People v Blunt*, 189 Mich App 643, 648, 473 N.W.2d 792 (1991), to support an argument that procedural rules should have prospective effect only. Yet, the *Reitmeyer* Court expressly rejected *Blunt*'s analysis, as applied to the potential retroactivity of amended court rules:

There are numerous issues inherent in a discussion whether certain laws operate retrospectively or prospectively. For example, there is conflicting case law on the issue whether court rules should generally be applied retrospectively or prospectively. See, for example, *People v Blunt*, 189 Mich App 643, 648; 473 NW2d 792 (1991), and *Harris v Pennsylvania Erection & Constr*, 143 Mich App 790, 795; 372 NW2d 663 (1985). Further, it could be argued that the triggering event for application of the court rule here was the date of the filing of the motion for sanctions, the decision regarding the motion, or the date of the offer of judgment itself. However, because the court rules provide clear direction regarding the application of new or amended court rules that does not rely on the

language of "retrospectivity" and "prospectivity," we need not delve into such issues or address these problems here. [*Reitmeyer*, 237 Mich App at 336 n 2.]

The upshot of the above authority is that *Reitmeyer* is binding on this Court and that decision held that "the norm is to apply the newly adopted court rules to pending actions unless there is reason to continue applying the old rules." *Reitmeyer*, 237 Mich App at 337. The dissent offers no reason—let alone a compelling reason—to apply the former version of MCR 6.429 to the facts of this case. The Michigan Supreme Court recognized the unworkability of the former court rule that did not allow a trial court to correct a substantive mistake, on its own initiative, in the absence of a motion filed by either party. The Supreme Court therefore amended the court rule to provide a trial court authority to sua sponte correct such a mistake.

*Reitmeyer* stressed that MCR 1.102 provides clear direction regarding whether a court rule is to be applied retrospectively or prospectively. This rule states, "A court may permit a pending action to proceed under the former rules if it finds that the application of these rules to that action would not be feasible or would work injustice." The dissent does not explain why the application of the amended version of MCR 6.429 in this case "would not be feasible or would work injustice." An "injustice is not present merely because a different result would be reached under the new rules." *Reitmeyer*, 237 Mich App at 337 (cleaned up). We see nothing unfeasible or unjust in applying the amended court rule adopted by our Supreme Court to a case that was pending on direct review when the amended court rule became effective. Furthermore, we see nothing unfeasible or unjust in providing a trial court with a procedure by which it can correct an invalid sentence by imposing a statutorily mandated punishment. In contrast, it would be unjust to allow a defendant who pleaded guilty to felony crimes to escape the statutorily mandated punishment for those crimes simply because the defendant believes he found a technical "loophole." The Supreme Court issued an opinion, two months after defendant's sentencing in this case, announcing an interpretation of the court rules governing how trial courts may correct invalid sentences. The Supreme Court then adopted an amended court rule, while defendant's appeal was pending in this Court, providing a trial court the ability to correct an invalid sentence on its own initiative. We conclude that there is no reason to apply the old court rule in this case, and we therefore apply the amended court rule.[4]

The dissent seems to imply that *Reitmeyer* was overruled by *Ligons v Crittenton Hosp*, 490 Mich 61, 88; 803 NW2d 271 (2011). Not so. In fact, *Ligons* cited *Reitmeyer* with approval. Moreover, subsequent to the Supreme Court's decision in *Ligons*, other panels of this Court have continued to recognize the validity of *Reitmeyer* and apply it in the same manner that we apply it in this case—to guide the decision whether a court rule should be applied retroactively. See e.g.

---

[4] See *People v Colbert-Brand*, unpublished per curiam opinion of the Court of Appeals, issued December 6, 2018 (Docket No. 338483), pp 5-6, in which another panel of this Court applied the amended court rule to a trial court's sua sponte correction of a substantive error in the original judgment of sentence. Although we recognize that unpublished opinions of this Court are not binding precedent, MCR 7.215(C)(1), they may be considered instructive or persuasive. *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

*Eberbach v Massey*, unpublished per curiam opinion of the Court of Appeals, issued May 21, 2019 (Docket No. 346025); *Colbert-Brand*, unpub op at pp 5-6; *Grenier v Windsor*, unpublished per curiam opinion of the Court of Appeals, issued October 20, 2015 (Docket No. 321932).

The dissent also suggests that *Ligons* announced a categorical rule that, when the Supreme Court includes an effective date in the order adopting amendments to a court rule, this constitutes an explicit order that the amended rules have prospective effect only. We disagree with the dissent that the *Ligons* Court announced such a per se rule. Although the *Ligons* Court did not analyze the potential applicability of MCR 1.102, it applied *Reitmeyer* (which relied on MCR 1.102) when it declined to apply amended rules retroactively where doing so was infeasible. It is common for the Supreme Court to provide effective dates for amendments to the court rules, and we cannot read *Ligons* for the proposition that stating an effective date in an amended court rule abrogates the applicability of MCR 1.102.

As explained earlier, the amended version of MCR 6.429 provides:

> (A) Authority to Modify Sentence. The court may correct an invalid sentence, on its own initiative after giving the parties an opportunity to be heard, or on motion by either party. But the court may not modify a valid sentence after it has been imposed except as provided by law. Any correction of an invalid sentence on the court's own initiative must occur within 6 months of the entry of the judgment of conviction and sentence.

We note that the trial court in this case entered the amended judgment of sentence less than two weeks after the entry of the original invalid judgment of sentence. Therefore, the trial court's amended sentence satisfies the requirement of the amended MCR 6.429 that "[a]ny correction of an invalid sentence on the court's own initiative must occur within 6 months of the entry of the judgment of conviction and sentence."[5]

We must consider, however, whether the trial court corrected the invalid sentence on its own initiative "after giving the parties an opportunity to be heard," as required by the amended language of MCR 6.429. The trial court did not initially provide the parties the opportunity to be heard on the addition of lifetime electronic monitoring to the judgment of sentence. Rather, the trial court provided the parties the opportunity to be heard on the prosecutor's motion to amend the felony information to alter the date of the listed offense. The omission of lifetime electronic

---

[5] The dissent correctly points out that the hearing on defendant's motion challenging the trial court's amended judgment of sentence occurred more than six months of the entry of the original invalid judgment of sentence. Yet, the amended court rule clearly states, "Any correction of an invalid sentence on the court's own initiative must occur within 6 months of the entry of the judgment of conviction and sentence." MCR 6.429(A). It is the *correction of the invalid sentence*, i.e., the entry of the amended judgment of sentence, that must occur within six months. In this case, the trial court corrected the invalid sentence within less than two weeks after the entry of the original invalid judgment of sentence.

monitoring from the original judgment of sentence was not discussed at that hearing. The trial court did, however, provide the parties the opportunity to be heard on the addition of lifetime electronic monitoring once defendant filed a motion challenging the trial court's amendment. The trial court conducted a hearing on that motion and both parties had a full and fair opportunity to be heard on this precise issue.

On these facts, we conclude that the trial court substantially complied with the requirement of the amended MCR 6.429 that the trial court correct an invalid sentence on its own initiative "after giving the parties an opportunity to be heard." Defendant had an opportunity to be heard in the trial court regarding the correction of the invalid sentence. See *People v Plumaj*, 284 Mich App 645, 649; 773 NW2d 763 (2009) (holding that a trial court must substantially comply with the requirements of MCR 6.302), see also *People v Mosly*, 259 Mich App 90, 97; 672 NW2d 897 (2003) (in the context of plain-error review, holding that rules of automatic reversal are disfavored for a host of obvious reasons).

Finally, even setting aside the matter of substantial compliance, we conclude that the trial court's failure to grant defendant an opportunity to be heard before correcting the invalid sentence was harmless. See MCL 769.26 (stating that no judgment shall be set aside or reversed in any criminal case for error on any matter of pleading or procedure unless the error resulted in a miscarriage of justice); *People v Elston*, 462 Mich 751, 765-766; 614 NW2d 595 (2000) (applying harmless-error review to a violation of a court rule that was nonconstitutional in nature); *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999) (holding that MCL 769.26 controls judicial review of preserved, nonconstitutional error). Defendant received the opportunity to be heard on this issue before appellate proceedings began. The trial court can hardly be faulted for failure to comply strictly with the requirements of a court rule that did not yet exist when the trial court conducted the proceedings to correct the invalid sentence. At the time it corrected the original invalid sentence, the trial court did not have the benefit of the guidance in *Comer*, let alone the benefit of the guidance in the amended court rule enacted in response to *Comer*. Yet, the trial court provided defendant with the opportunity to be heard regarding the trial court's correction of the invalid sentence on its own motion. This is what the amended court rule now requires.[6]

Because we conclude that the trial court's correction of the original invalid sentence is governed by the amended language of MCR 6.429, and because we conclude that the trial court gave the parties an opportunity to be heard regarding the amendment to the judgment of sentence to include lifetime electronic monitoring, we affirm.

---

[6] The dissent argues that we put the cart before the horse in this case because the trial court corrected the invalid sentence *before*—rather than *after*—giving the parties an opportunity to be heard. Yet, it remains the case that defendant had an opportunity to be heard in the trial court regarding the correction of the invalid sentence. Defendant had the opportunity to brief and argue the issue in the trial court, and received full consideration of the merits of his arguments. The purpose of the amended court rule has been satisfied.

Affirmed.

/s/ Brock A. Swartzle
/s/ Thomas C. Cameron