# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DAVID MICHAEL STEWART,

       Defendant-Appellant.

UNPUBLISHED
November 6, 2018

No. 338014
Kent Circuit Court
LC Nos. 15-010568-FH;
15-010820-FH

Before: MURRAY, C.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant, David Michael Stewart, appeals as of right his convictions of two counts of violating the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, by willfully failing to register his residential address, contrary to MCL 28.729(1)(a). We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On January 2, 2015, defendant registered his residential address with the Kent County Sheriff's Department (KCSD). The address he registered was that of a home owned by his sister on North Division in Sparta. According to defendant's sister, defendant lived in that home in January 2015, but moved out by the end of June 2015. Defendant's niece corroborated that story, testifying that she moved into the North Division home around July 4, 2015, and that defendant never lived at the address after she moved in. Defendant, moreover, testified that he actually moved out of that home in April 2015, and lived exclusively at a homeless shelter in Grand Rapids through October 2015. Both defendant's sister and his niece encouraged defendant to register the address of the homeless shelter as his residential address, which defendant indicated an intent to do.

A KCSD deputy attempted to verify defendant's residential address on several occasions between February 2015 and October 2015, and visited the home on North Division many times. When the deputy contacted defendant by telephone in July 2015, defendant stated that he was living at the North Division address. Yet when the deputy interviewed defendant's sister and niece on September 8, 2015, he obtained information that defendant was not living there.

On October 15, 2015, defendant was arrested and charged with one count of failing to register his residential address as a sex offender. Accordingly, his residential address was changed to that of the county jail until his release from incarceration on October 16, 2015. Upon

-1-

release, however, defendant re-registered his residential address as the home on North Division, despite not having lived in the home since April 2015. He was then charged with a second count of failing to register his residential address as a sex offender. As explanation for this failure, defendant testified that he attempted to register the address of the homeless shelter at both the city police department and county sheriff's department, but that law enforcement would not allow him to do so.

Before trial, defendant sent the trial court a number of handwritten letters indicating that he was displeased with his court-appointed attorneys and asking the court for advice regarding whether he should opt to represent himself. Additionally, defendant's second appointed counsel John L. Grace, III, filed a pretrial motion to withdraw from the case, informing the court that defendant told him: "I do not recognize you as my lawyer anymore. That is all I have to say to you." At the motion hearing, defendant reiterated his dissatisfaction with his appointed counsel, and again asked the court for advice regarding whether he should represent himself at trial. In response, the trial court asked appointed counsel if anyone else from the Kent County Defender's office could represent defendant, to which counsel answered that his director would not allow such a substitution. The court then advised defendant that his appointed counsel had been a zealous advocate throughout his career, asked defendant if he could afford to hire counsel himself, and ultimately concluded that the issue of defendant's self-representation could be addressed following a status conference to give defendant additional time to consider cooperating with appointed counsel.

Four months later, on the first day of trial, appointed counsel renewed the motion to withdraw, stating that defendant wished to represent himself. Addressing the request, the trial court engaged in the following colloquy with defendant:

> *The Court*: Mr. Stewart, you've heard what I have. Let me just say this. Trials are conducted according to established rules of procedure and evidence. You don't know those rules, and I don't bend the rules simply because a person is unrepresented.
>
> If you want to represent yourself, it has to be a clear and unambiguous desire on your part. I'll still require [defense counsel] to stand by should you either change your mind or need some legal assistance. The decision is yours. Based on what your attorney told me, do you want [defense counsel] to represent you?
>
> *The Defendant*: Not without a statement. I can't proceed further down this venue without making a statement to clarify my position, and you're telling me that's not possible.
>
> *The Court*: The question is simple. It's not complex. Either he represents you, unqualified, or you, unqualified, say I don't want him to represent me. Do you understand the question?
>
> *The Defendant*: I understand the question, but it puts me in error to simply restate either yea or nay on that. I need to clarify my position first.

*The Court*: At the end of your statement will you be able to say yea or nay, yes or no?

*The Defendant*: Yes, sir.

*The Court*: Let me read it. Give it to the deputy, and I'll read it.

The trial court reviewed and addressed each issue raised by defendant in his handwritten statement, including the sequestering of witnesses, the applicability of MRE 404(b), disqualification of the trial judge, denial of access to a law library while incarcerated, and defendant's relationship with his appointed counsel. With regard to defendant's relationship with counsel specifically, the court reiterated that Mr. Grace had always been prepared and professional throughout his career, and stated that defendant could contact the Kent County Defender's office, but that: "They have a policy. They don't do that. They don't say if you don't like Mr. Grace, I'm going to give you his colleague thus and so. They just don't do that." The trial court then returned to the question whether defendant wanted to represent himself:

*The Defendant*: Now, excuse me again. I can't remember the question you just asked me.

*The Court*: Did you want to represent yourself or do you want [defense counsel] to represent you?

*The Defendant*: I'll go with myself.

Accepting defendant's decision, the court asked appointed counsel to serve as standby counsel in the event that defendant should seek his assistance during trial. Defendant proceeded to represent himself throughout trial, and defense counsel remained available in the courtroom. After a four-day jury trial, the jury convicted defendant on both counts of willfully failing to register his residential address, as a sex offender, in violation of the SORA.

## II. WAIVER OF THE SIXTH AMENDMENT RIGHT TO COUNSEL

Defendant first argues that he was denied his constitutional right to counsel because the trial court never properly determined that he knowingly and intelligently waived that right.

## A. PRESERVATION

Generally, "[f]or an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). At trial, defendant requested the opportunity to represent himself, and the court allowed him to do so. And defendant never objected that he had been deprived of his Sixth Amendment right to counsel. Nor did defendant file a motion for an evidentiary hearing or a new trial raising this issue.

We hesitate, however, to hold that defendant failed to preserve his current Sixth Amendment challenge and apply plain-error review, because to do so would be an endorsement of the illogical requirement that an unrepresented defendant object to the waiver of counsel he may have made unknowingly, unintelligently, or involuntarily. In any event, we need not decide

this issue, because as will be explained more fully below, no error occurred, plain or otherwise.[1] The court substantially complied with all requirements for determining that defendant properly waived his right to counsel.

## B. STANDARD OF REVIEW

When reviewing whether a defendant validly waived his Sixth Amendment right to counsel, this Court engages in a de novo review of the entire record. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). However, this Court will not disturb a trial court's factual findings absent clear error. *Id.* "Credibility is crucial in determining a defendant's level of comprehension, and the trial judge is in the best position to make this assessment." *Id.* (quotation marks and citations omitted). Further, the meaning of the phrase "knowing and intelligent" is a question of law that this Court must review de novo. *Id.* "It is well established that a total or complete deprivation of the right to counsel at a critical stage of a criminal proceeding is a structural error requiring automatic reversal." *People v Willing*, 267 Mich App 208, 224; 704 NW2d 472 (2005).

## C. ANALYSIS

As noted above, defendant asserts that he did not knowingly and intelligently waive his right to counsel because the trial court failed to adequately warn him of the perils of self-representation.

The Supreme Court has described the right to self-representation as follows:

> The right of self-representation under Michigan law is secured by both Constitution and statute. Const 1963, art 1, §13 reads: "A suitor in any court of this state has the right to prosecute or defend his suit, either in his own proper

---

[1] We recognize that in *People v Campbell*, 316 Mich App 279, 283; 894 NW2d 72 (2016), overruled on other grounds by *People v Arnold*, 502 Mich 438 (2018), this Court determined that plain-error review applied to a defendant's Sixth Amendment challenge on appeal, where the defendant failed to raise the issue of improper waiver of the right to counsel in the trial court. However, as is the case here, the *Campbell* Court never actually had to apply plain-error review because it held that the trial court substantially complied with all requirements for determining that the defendant knowingly, intelligently, and voluntarily waived his right to counsel. *Id.* at 287-288. Additionally, we note that in *People v Cain*, 498 Mich 108, 114-128; 869 NW2d 829 (2015), the Supreme Court applied plain-error review to a structural error, like the total deprivation of counsel would be, which generally requires automatic reversal, *People v Willing*, 267 Mich App 208, 224; 704 NW2d 472 (2005). *Cain* is, however, distinguishable because it involved a challenge to the trial court's failure to properly swear in the jury, *Cain*, 498 Mich at 113-115, not a challenge to the proper waiver of counsel. There is a significant difference between requiring a defendant, whether represented or not, to object to a trial court's failure to give jurors the proper oath, and requiring a defendant to object to his own potentially involuntary waiver of counsel.

person or by an attorney". MCLA 763.1; MSA 28.854 provides: "On the trial of every indictment or other criminal accusation, the party accused shall be allowed to be heard by counsel and may defend himself, and he shall have a right to produce witnesses and proofs in his favor, and meet the witnesses who are produced against him face to face". The United States Supreme Court has held that this right is also implicitly guaranteed in the Sixth Amendment to the United States Constitution. *Faretta v California*, 422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 (1975). None of these provisions, however, guarantees an absolute right to proceed to trial without counsel. [*People v Anderson*, 398 Mich 361, 366; 247 NW2d 857 (1976).]

To exercise the right to self-representation, a defendant must waive his correlative Sixth Amendment right to counsel. Thus, before a defendant may proceed *in propria persona*, the trial court must ensure that the following requirements are met:

First, the request must be unequivocal. This requirement will abort frivolous appeals by defendants who wish to upset adverse verdicts after trials at which they had been represented by counsel. This requirement of "unequivocality" is well established in the courts of this state and others . . . .

Second, once the defendant has unequivocally declared his desire to proceed *pro se* the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily. The trial court must make the *pro se* defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open. Defendant's competence is a pertinent consideration in making this determination. But his competence does not refer to legal skills, (f)or his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.

The third and final requirement is that the trial judge determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business. [*Anderson*, 398 Mich at 367-368 (quotation marks and citations omitted; alteration in original).]

In addition, before allowing a defendant to waive his right to counsel, a trial court must satisfy the requirements of MCR 6.005(D), which provides:

(D) Appointment or Waiver of a Lawyer. If the court determines that the defendant is financially unable to retain a lawyer, it must promptly appoint a lawyer and promptly notify the lawyer of the appointment. The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

"Proper compliance with the waiver of counsel procedures set forth by this Court is a necessary antecedent to a judicial grant of the right to proceed in propria persona. Proper compliance requires that the court engage, on the record, in a methodical assessment of the wisdom of self-representation by the defendant." *People v Adkins (After Remand)*, 452 Mich 702, 720-721; 551 NW2d 108 (1996), abrogated in part on other grounds by *Williams*, 470 Mich at 641, n 7. Yet a trial court need only substantially comply with the requirements set forth in *Anderson* and MCR 6.005(D) before granting a defendant's self-representation request. *Adkins*, 452 Mich at 706. "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Id*. at 726-727.

Initially we conclude that the trial court fully complied with MCR 6.005(D). As provided above, MCR 6.005(D)(1) requires that a trial court advise a defendant of the charge or charges against him, the maximum possible prison sentence for the offenses, and any mandatory minimum sentences required by law before allowing him to waive his Sixth Amendment right to counsel. MCR 6.005(D)(1). Defendant asserts that the trial court failed to advise him of the maximum and minimum sentences he faced, but the record proves otherwise. At both the pretrial status conference and trial, the court informed defendant of his charges, and that he faced a maximum sentence of up to eight years in prison. And despite defendant's argument to the contrary, MCR 6.005(D)(1) does not require a trial court to inform a defendant of the minimum sentence for a crime according to the sentencing guidelines; it only requires that a defendant be advised of any *mandatory* minimum sentence required by law. A violation of MCL 28.729(1)(a) does not carry a mandatory minimum sentence. Further, it is undisputed that the trial court complied with MCR 6.005(D)(2) when it required defendant's appointed counsel to remain available throughout trial as standby counsel.

Looking next to the first *Anderson* requirement for properly waiving the right to counsel, *Anderson*, 398 Mich at 367, we have no doubt that defendant's request to represent himself was unequivocal. Defendant sent multiple letters to the trial court expressing dissatisfaction with his appointed counsel[2] and requesting advice regarding self-representation, and stated in one such letter: "If the honorable court finds that it cannot recommend a new public defender to take my case, then this letter will serve as my formal declaration of my intent to act as my own legal counsel. Effective immediately." Further, despite (1) the court's warning that the Kent County Defender's office would likely be unwilling to provide defendant with different appointed counsel (his third), (2) that appointed counsel Mr. Grace was known by the court to have always

---

[2] From the record, it appears that defendant was originally assigned a public defender who left the position and was ultimately replaced by Mr. Grace. Defendant's first two letters to the court address his dissatisfaction with this original appointed counsel.

zealously and professionally represented clients, and (3) that defendant lacked a formal legal education, defendant still chose to represent himself, and never wavered in that decision.

Further, on the basis of the entire record before us, *Williams*, 470 Mich at 640, we hold that the trial court also substantially complied with the second and third *Anderson* requirements. First, the record clearly demonstrates that the court adequately warned defendant of the dangers of self-representation, beyond simply advising defendant that proceeding *in propria persona* would be perilous. See *People v Blunt*, 189 Mich App 643, 650; 473 NW2d 792 (1991) ("[W]hile the trial court advised [the] defendant that proceeding pro se was perilous, the trial court did not explain the risks which accompany self-representation."). In a short colloquy with defendant, the court noted that he was not a lawyer, had no formal legal education, was unfamiliar with the rules of criminal trials, and would be held to those rules. Additionally, on both the first day of trial and at the pretrial hearing on appointed counsel's motion to withdraw, the court highlighted Mr. Grace's vast experience in the legal field, as well as his professionalism and competence, thus making an obvious comparison to defendant between proceeding with and without counsel. As such, the trial court made defendant aware of the dangers of self-representation, and properly determined that defendant knowingly, intelligently, and voluntarily waived his right to counsel. *Anderson*, 398 Mich at 367-368.

Second, the court ensured that defendant's self-representation would not burden or disrupt the proceedings. *Id*. at 368. As noted above, before accepting defendant's decision to represent himself, the court addressed each issue raised by defendant in the handwritten statement he insisted the court read, including the sequestering of witnesses, the applicability of MRE 404(b), disqualification of the trial judge, and denial of access to the law library while incarcerated.[3]

Our conclusion is unaltered by the court's failure to make an express finding on the record that defendant's waiver of his Sixth Amendment right to counsel was knowingly, intelligently, and voluntarily given. See *Adkins*, 452 Mich at 726-727. As in *People v Campbell*, 316 Mich App 279, 288; 894 NW2d 72 (2016), overruled on other grounds by *People v Arnold*, 502 Mich 438 (2018), "[i]t is clear from the proceedings that the court endeavored to make the requisite determinations and that it actually found that [defendant's] waiver was unequivocal, knowing, and voluntary."

We are likewise unpersuaded by defendant's argument that the trial court's pretrial examination of his competency supports a determination that he did not validly waive his Sixth Amendment right to counsel. In *Indiana v Edwards*, 554 US 164; 128 S Ct 2379; 171 L Ed 2d 345 (2008), the United States Supreme Court distinguished between a defendant's competency to stand trial and his "mental capacity to conduct his trial defense" without counsel, *id*. at 174,

---

[3] We note that even during trial the trial court exhibited a great deal of patience with defendant as he proceeded *in propria persona*, pausing the proceedings when necessary to assist him with (1) giving an opening statement and closing argument, (2) conducting direct and cross-examination of witnesses, and (3) obtaining the presence of witnesses at trial who had not been disclosed or subpoenaed.

stating that "[i]n certain instances an individual may well be able to satisfy [the] mental competence standard [to stand trial], for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel," *id*. at 175-176.

The trial court did not examine defendant's mental competency to represent himself at trial, despite the fact that it earlier found sufficient grounds to examine his mental competency to stand trial at all. However, *Indiana* does not require such an examination. Instead, the *Indiana* Court simply concluded that "the Constitution *permits* States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id*. at 177-178 (emphasis added). Moreover, the trial court accepted the parties' stipulation that defendant was competent to stand trial on the basis of a competency report which stated that "[defendant] presented as a legally knowledgeable man who demonstrated a good understanding of the nature and object of the proceedings against him," and "when considering all available information . . . [defendant] was not suffering from any mental condition that might be expected to interfere with his ability to understand the nature and object of the proceedings against him or assist rationally in his defense, should he decide to do so."

Accordingly, we hold that the trial court substantially complied with both *Anderson* and MCR 6.005(D), and properly determined that defendant knowingly, intelligently, and voluntary waived his right to counsel. Thus, defendant's Sixth Amendment challenge fails.

### III.  TRIAL COURT'S REFUSAL TO ACCEPT STIPULATION

Next, relying on *Old Chief v United States*, 519 US 172; 117 S Ct 644; 136 L Ed 2d 574 (1997), and *People v Swint*, 225 Mich App 353; 572 NW2d 666 (1997), defendant argues that the trial court abused its discretion by refusing to accept the parties' stipulation that he previously committed an offense subjecting him to the reporting and address-change requirements of the sex offender registry. Although we agree, we nonetheless conclude that the error was harmless.

Before trial, defendant objected to the statement in the proposed, preliminary jury instructions that he had been previously convicted of possession of child sexually abusive material. Defendant argued that MRE 404(b) required the prosecutor to "stand silent on that." The trial court reviewed MRE 404(b) and noted that evidence of other crimes, wrongs, or acts may be admissible where that evidence is material.

There can be no question that the name and nature of that prior conviction carried the risk of unfair prejudice to defendant because it could tempt jurors to engage in bad-character reasoning. However, in *Swint*, 225 Mich App at 379, this Court held that the trial court abused its discretion by refusing to accept the defendant's stipulation, but that the preserved, nonconstitutional error was harmless in light of the overwhelming evidence presented at trial. The same is true here. The overwhelming evidence of defendant's guilt overrode any potential prejudice. Defendant registered his residential address with the KCSD in January 2015, when he moved in to his sister's home on North Division, and conceded *in his own testimony* that he moved out of his sister's home in April 2015, long before the charged offense date. And defendant testified that he went to the city police department and the county sheriff's department

in an attempt to change his address, which would have supported a jury finding that defendant knew he was required to register a change of residence. This evidence significantly hampers defendant's argument that the jury convicted him only because they learned that he had previously been convicted of possessing child pornography. Furthermore, even if the identity of defendant's prior conviction had been eliminated, the jury would still have been informed that defendant had previously been convicted of a sex offense that subjected him to the registration requirements of the SORA. Based upon a review of the whole record, then, we conclude that the trial court's error in refusing to accept the parties' stipulation was harmless.

## IV. PROSECUTOR'S FAILURE TO DISCLOSE EVIDENCE

During his trial testimony, defendant attempted to admit into evidence an affidavit from his sister, who lives in Florida. The prosecutor objected to admission of the affidavit into evidence on several grounds, and the trial court sustained the objection on the basis of hearsay. In his Standard 4 brief, defendant argues this affidavit was new, credible, and material evidence that the prosecutor should have disclosed to the court and that should have led the prosecutor to remedy his convictions. In particular, defendant appears to quote portions of Rules 3.8(g) and (h) from the American Bar Association's current Model Rules of Professional Conduct. Because this question was not raised below, our review is for plain error, affecting his substantial rights. *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). We find no error, let alone plain error. The language from these ethical rules was only recently adopted in Michigan and will not become effective until January 1, 2019. See Administrative Order No. 2014-46, ___ Mich ___ (2018). Moreover, the rules impose *post-conviction* ethical obligations on prosecutors, not pretrial or trial obligations. And, contrary to defendant's argument, the proposed evidence was disclosed to the trial court and, while potentially impeaching another witness's testimony, it does not establish that defendant did not commit the offenses of which he was convicted.

Likewise, to the extent defendant's Standard 4 brief raises a due process argument, relying on *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), plain-error review applies. *Carines*, 460 Mich at 774. "The Supreme Court of the United States held in *Brady* that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady*, 373 US at 87. "[T]he components of a 'true *Brady* violation,' are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Chenault*, 495 Mich at 150. Here, defendant obtained his sister's affidavit and, although the prosecution objected to its admission, it never suppressed it. Accordingly, defendant's *Brady* argument fails, as does any due process argument defendant has attempted to assert.[4]

---

[4] Defendant also argues that the certified copy of his sex offender registry listed both the North Division address and the homeless shelter address. Defendant complains that this evidence was not made available to him in his first request for transcripts but came with his second request for transcripts. However, the jury was provided with plaintiff's exhibit and had that information before it when it decided that defendant violated the registration requirements of the SORA.

# V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that his convictions are invalid because he received the ineffective assistance of counsel. To preserve an issue of ineffective assistance of counsel, a defendant must file a motion in the trial court for a new trial or an evidentiary hearing, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or file a timely motion to remand in this Court, see *People v Ginther*, 390 Mich 436, 444-445; 212 NW2d 922 (1973). Defendant did not move for a new trial, an evidentiary hearing, or remand. Therefore, defendant's ineffective assistance of counsel argument is unpreserved for appellate review.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Where an ineffective assistance of counsel challenge is unpreserved, our review is limited to errors apparent in the record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).

To establish ineffective assistance of counsel, a defendant must prove that defense counsel's performance was objectively unreasonable in light of prevailing professional norms, and that, but for counsel's error, it is reasonably probable that the outcome would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). Effective assistance of counsel is presumed, *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), and a defendant bears a heavy burden of proving otherwise, *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). In doing so, a defendant must overcome a strong presumption that the challenged conduct might be considered sound trial strategy. *People v Knapp*, 244 Mich App 361, 385-386, 386 n 7; 624 NW2d 227 (2001). A defendant can only overcome the presumption by showing that counsel failed to perform an essential duty and that the failure was prejudicial to defendant. *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989). Counsel's performance must be measured against an objective standard of reasonableness, *People v Payne*, 285 Mich App 181, 188, 190; 774 NW2d 714 (2009), and without benefit of hindsight, *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995).

With regard to that portion of the proceedings in which defendant represented himself, defendant cannot assert he received the ineffective assistance of counsel:

> [A] defendant who exercises the free choice to represent himself faces certain consequences:
>
> > The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel. [*People v Kevorkian*, 248 Mich App 373, 419; 639 NW2d 291 (2001) (quotation marks and citation omitted).]

Therefore, defendant's ineffective assistance of counsel argument is limited to the period leading up to trial, when he was represented by court-appointed counsel.

Defendant first argues that his initial, court-appointed attorney disappeared and that he was never told what happened to that attorney. However, defendant was provided with substitute counsel from the Kent County Defender's office when his first counsel was unable to continue the representation. Therefore, defendant cannot demonstrate the ineffective assistance of counsel with regard to his first appointed counsel's representation. Defendant admits that he met with his second, court-appointed attorney, nine months before trial, and that he initially agreed to allow his second attorney to represent him. However, defendant argues that there was a lack of "cohesive liaison" between him and his second appointed counsel. Defendant complains that his second appointed counsel was unresponsive to his important pleas for assistance, and that his requests for help fell on deaf ears. With regard to both attorneys, defendant identifies no action or inaction on the part of his attorneys that could qualify as the ineffective assistance of counsel. Nor does defendant argue that his attorneys should have pursued a particular pretrial motion, interviewed a particular witness, or explored a particular defense. Defendant simply does not identify any action or inaction on the part of his attorneys that could qualify as objectively unreasonable in light of prevailing professional norms. See *Strickland*, 466 US at 688, 694. Therefore, he is not entitled to relief on these grounds.

Furthermore, in order to prove ineffective assistance of counsel, a defendant must demonstrate that, but for counsel's error, it is reasonably probable that the outcome would have been different. See *Id*. Defendant cannot make that showing. Defendant admitted in his own testimony that he moved out of his sister's house, his registered residential address, in April 2015. In addition, his sister and his niece testified that he did not live at the registered residential address during the time period in question. Combined with admission of the certified copy of defendant's sex offender registration records, showing the residential address that defendant registered with law enforcement, there is no reasonable probability that the outcome of the case would have been different because of something that defendant's appointed counsel did or failed to do before trial.[5]

---

[5] Defendant briefly argues in his Standard 4 brief that his conviction was based on insufficient evidence. However, defendant's argument is confined to a single clause of a single sentence: "conviction based on insufficient evidence violates the U.S. Constitution." Defendant provides no further argument regarding the sufficiency of the evidence to sustain his conviction. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted). In any event, viewing the record evidence in the light most favorable to the prosecution, there was sufficient evidence to support his convictions.

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Anica Letica